IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JEREMY DUSTIN PAPKE,<br><br>        Defendant. | Case No. 22-CR-084-JFH |

## OPINION AND ORDER

This case comes before the Court *sua sponte*. The Court issues this Opinion and Order to summarize the existing record and address misapprehensions by the United States of America ("Government") and Defendant Jeremy Dustin Papke ("Defendant").

## BACKGROUND

**The Charged Conduct**

Defendant is 45 years old. The indictment charges that in September 2021, when he was 42 years old, he knowingly engaged in a sexual act and sexual contact with, and coerced or enticed to participate in a criminal sexual act, a child between the ages of 12 and 16. Dkt. No. 2. The child referenced in the indictment is Defendant's half-sister, L.P., who was 13 years old at the time. Dkt. No. 32 at 8; Dkt. No. 58 at 8-9; Dkt. No. 84 at 9. Defendant and L.P. lived in the same home. *Id.* At night, when the rest of their family was asleep, Defendant would tell L.P. to go into his room, lay on his bed, and take off her clothes, after which he would engage in sexual activity with her, including penetrating her vulva with his penis and causing her hand to touch his penis to arouse and gratify his sexual desire. *Id.*

Although the indictment charged a one-month window of behavior, Defendant's sexual abuse of his minor half-sister spanned six years, beginning in 2015 when L.P. was seven years

old.[1] During this time, Defendant and L.P.'s father often left L.P. in Defendant's care and, at times, relied on Defendant to co-parent L.P.

Had the case gone to trial, the Government intended to offer evidence under Federal Rules of Evidence 413 and 414 that Defendant sexually abused his stepsister when she was 14 or 15 years old; attempted to sexually abuse his cousin when she was 14 or 15 years old; and sexually abused another half-sister when she was 25 years old. Dkt. No. 20 (sealed).[2]

**The Plea Agreements**

Defendant was charged with three sexual abuse-related crimes, each with different exposure for potential imprisonment. Dkt. No. 2.

| Offense | Statutes | Potential Imprisonment |
|---|---|---|
| Count One: Sexual Abuse of a Minor in Indian Country | 18 U.S.C. §§ 1151, 1153, & 2243(a) | Not more than 15 years |
| Count Two: Abusive Sexual Contact with a Minor in Indian Country | 18 U.S.C. §§ 1151, 1153, & 2244(a)(3) | Not more than 2 years |
| Count Three: Coercion and Enticement of a Minor in Indian Country | 18 U.S.C. §§ 1151, 1152, & 2422(b) | Not less than 10 years and up to life |

In June 2022, the parties negotiated an 11(c)(1)(C) plea agreement to Count Three only. Dkt. No. 32 (the "2022 Agreement"). Count Three had a statutory range of not less than 120 months and up to life, but the 2022 Agreement stipulated a sentencing range of 156-180 months—

---

[1] This evidence was summarized in both of Defendant's presentence reports without objection.

[2] Because of Defendant's guilty plea, the Court has not ruled on whether this evidence would be admissible.

in other words, not more than 15 years. *Id.* In August 2023, the Court rejected this agreement as providing an insufficient sentence. Dkt. No. 49; Dkt. No. 50.

In November 2023, the parties entered a new plea agreement pursuant to Rule 11(c)(1)(A). Dkt. No. 58 (the "2023 Agreement"). No longer was Defendant pleading to Count Three with its 10 years to life statutory range. Instead, the 2023 Agreement stipulated that the Government would move to dismiss Count Three in exchange for Defendant's plea of guilty to Counts One and Two. *Id.* With Count One's statutory range of 0-15 years and Count Two's statutory range of 0-2 years, the 2023 Agreement limited Defendant's potential exposure to 17 years. In May 2024, the Court rejected this agreement because it provided an insufficient sentence. Dkt. No. 73.

In June 2024, the parties negotiated a third plea agreement, returning to an 11(c)(1)(C) structure. Dkt. No. 84 (the "2024 Agreement"). This agreement stipulated a sentence of 235 months, or 19.5 years, for all three counts. *Id.* The Court took Defendant's change of plea and accepted his plea of guilty while withholding acceptance or rejection of the plea agreement until sentencing. Dkt. No. 81. During the change of plea hearing, Defendant's counsel made a record that the parties believed the Court's previous actions were an abuse of discretion and lacked foundation in the record.

## AUTHORITY AND ANALYSIS

**Plea Agreement Authority**

In the federal criminal system, parties may negotiate a plea agreement between themselves. Fed. R. Crim. P. 11(c)(1). Various types of plea agreements exist, including an agreement where the Government agrees not to bring, or to move to dismiss, other charges ("11(c)(1)(A)") or agrees that a specific sentence or sentencing range is the appropriate disposition of the case in a way that binds the sentencing court if the court accepts the agreement ("11(c)(1)(C)"). *Id.* However, a

defendant has no right to have a plea agreement or bargain accepted. *United States v. Carrigan*, 778 F.2d 1454, 1465 (10th Cir. 1985) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Under Rule 11, district courts possess the power to reject plea bargains, and "so long as [they] exercise sound judicial discretion in rejecting a tendered plea, Rule 11 is not violated." *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995) (citing *Santobello*, 404 U.S. at 262). "[A]cceptance of a plea is a decision for the district judge: 'The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual trial judge.'" *Carrigan*, 778 F.2d at 1461 (quoting Fed. R. Crim. P. 11(e), advisory committee note).

Four types of plea bargains exist, each implicating a different type of discretion and power. *Robertson*, 45 F.3d at 1437. First are charge bargains. *Id.* These are predicated on the dismissal of some counts and implicate the discretion of the executive branch to make charging decisions. A district court's discretion in accepting or rejecting a charge bargain is limited due to separation of powers between the executive and judicial branches. *Id.*

Second and third are sentence bargains, predicated either on consensus regarding a particular sentence or the guarantee of a particular sentence. District courts have "considerable leeway" to reject sentence bargains because prosecutors have a "strictly advisory" role in sentencing and "[w]ithin the statutorily prescribed range, imposition of sentence is a matter of discretion for the district court." *Id.* (citations omitted). *See also United States v. Macias-Gonzalez*, 219 F. App'x 814, 817 (10th Cir. 2007)[3] (describing the judicial discretion to reject a sentence bargain as "very broad").

---

[3] Unpublished appellate opinions are not precedential but may be cited for persuasive value. Fed. R. App. P. 32.1.

Fourth and finally, hybrid bargains contain both part charge and part sentence bargains and thus "directly implicate[] both judicial and prosecutorial discretion." *Robertson*, 45 F.3d at 1438. A hybrid bargain "limits the sentencing power of the district court because its effect is to eliminate any imposition of the penalty of imprisonment for the alleged violations" of the charge or charges to be dismissed. *Carrigan*, 778 F.2d at 1462. The Tenth Circuit has adopted the Fifth Circuit's view of hybrid bargains, explaining that where a plea bargain is "cast in the form of a dismissal of a count" but has the effect of limiting the sentence available, "rejecting the plea bargain in order to impose an appropriate sentence" is a proper exercise of reasonable judicial discretion. *Id.* at 1463 (quotations omitted) (discussing *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977)). The Tenth Circuit reaffirmed this rule in *Robertson*, stating where a plea agreement attempts "to completely curtail that discretion, a district court's decision to preserve that aspect of judicial power is not an abuse of discretion." *Id.*

**Application**

*Robertson* requires that a district court "set forth, on the record, the prosecution's reasons for framing the bargain and the court's justification for rejecting it." 45 F.3d at 1438. While the Court believes it has already sufficiently articulated both these topics, it seems the parties weren't listening. Therefore, so that no party may claim ignorance, the Court once more addresses both.

***The prosecution's reasons for framing the bargain***

The Court has consistently recognized that a plea agreement "brings some closure" to L.P. and her family. Dkt. No. 49 at 11. When addressing the 2022 Agreement, it considered that L.P. and her family were consulted during negotiations and supported the bargain. *Id.* at 11, 15-16. It "[took] into account as well . . . the potential additional trauma that [a trial] could cause on the victim in the case." Dkt. No. 50 at 6. While the Court assessed L.P. as being "very capable of

5

testifying at trial" based on her courtroom demeanor and the statement she read into the record, it acknowledged that it hadn't "visited with her like [the Government] [has]." *Id.* The Court also referenced that the Government in this District has a track record of reliance on 11(c)(1)(C) plea agreements:

> And as I said before, it seems that your office has fallen in love with the 11(c)(1)(C). I've said it before. And we had a visiting judge here not too long ago that in one day rejected three 11(c)(1)(C)s. So you can continue to do that and you can try to make this sentence your sentence, or you can give me some latitude.

*Id.* at 11.

When it addressed the 2023 Agreement, the Court reiterated that it "empathize[d] with the victim in the case and [knew] there needs to be a resolution." Dkt. No. 73 at 15. It acknowledged the age of the case, noting it was "sympathetic to the victim in this case and the fact the case has been drug on for so long." *Id.* at 14. It also acknowledged that the Government had concerns about proving Count Three under a recent Tenth Circuit opinion. *Id.*[4]

---

[4] Specifically, the Government expressed concern about proving "persuasion" under the coercion and enticement statute (18 U.S.C. § 2422(b)) following the Tenth Circuit's decision in *United States v. Streett*, 83 F.4th 842 (10th Cir. 2023) because it was concerned that the Tenth Circuit "tightened up what's required" to prove persuasion, coercion, enticement, or inducement by requiring "calculated action that involves pressuring the child physically or psychologically to exploit conduct." Dkt. No. 73 at 8-9. The Court took a recess to review the *Streett* case, as well as other authority presented by the Government for the first time at the hearing. Following its review, the Court explained it believed *Streett* was not of concern here for two reasons. *Id.* at 14. First, it involved persuasion under a different, child pornography-related statute (18 U.S.C. § 2251(a)). Second and more importantly, the Court explained:

> Why we're focusing on persuasion I don't really even know when we have the word "coercion" in there which to me seems to be more important. But either way, even if we look at the word "persuasion," and I read the facts set forth not only by the victim's statements, but the presentence report, to me it looks like there's no question whether or not there was some psychological pressure based upon the facts as I understand them. I'm not concerned at all about the *Streett* case.

*Id.*

### *The Court's justification for rejecting it*

The parties construe their bargains as charge bargains. This oversimplifies the issue and misapprehends the Tenth Circuit's taxonomy of plea bargains.

What the parties have presented twice (and the Court has rejected twice) are hybrid bargains. The 2022 Agreement attempted to limit the Court's sentencing power by dictating a sentencing range of 156-180 months. This curtailed the range suggested by the advisory sentencing guidelines, would have prevented the Court from sentencing Defendant on Counts One and Two because of their anticipated dismissal, and capped the available sentence for Count Three, where the statute provided for not less than 120 months imprisonment and up to life. *See* 18 U.S.C. § 2422(b). The 2023 Agreement was no better. It attempted to limit the Court's sentencing power by dismissing the count with the greatest exposure and having Defendant plead instead to two counts that, if run consecutively at their statutory maximums, would total 204 months.

The Court has consistently noted that sentencing "decisions are the most serious decisions I think that I make in this position and so I don't take them lightly." Dkt. No. 49 at 19. "There's two people that live with the sentence following a sentencing, the defendant and me." Dkt. No. 50 at 11. It has explained that "[t]he guidelines are there for a purpose and a reason and that's to create a starting point so that we can have some consistencies across the country in what judges do, of course, but every case is unique and every case needs to consider not only the 3553(a) factors but all the things that go along with each individualized case and that's my obligation." Dkt. No. 50 at 8.[5]

---

[5] Counsel for Defendant asserted that an advisory guideline range under the United States Sentencing Guidelines, "although it's a starting point, is presumed reasonable." Dkt. No. 50 at 13. Not so at the district level. A *court of appeals* may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines. *Rita v. United States*, 551 U.S. 338, 347 (2007). However, the Supreme Court emphasized "that the

With this foundation, the Court has repeatedly stated that it believes the parties' negotiated sentences in the 2022 and 2023 Agreements are insufficient for the offense conduct, factoring in all relevant conduct and history leading up to the one-month window charged in the indictment. When considering the 2022 Agreement, the Court began with noting "concerns whether this plea agreement is sufficient considering the nature of the offense here." Dkt. No. 49 at 11. Subsequently, the Court explained:

> [F]rom [the Court's] perspective, it looks like to me, I'm dealing with a situation where Mr. Papke engaged in a pattern of activity involving prohibited sexual conduct by sexually abusing his sister on numerous occasions over a six-year period starting when she was seven years old.
>
> And so to me that length of time is pretty significant and certainly relevant and I know it's been factored into as an enhancement which increased the offense level. I recognize that. It increased the guideline range about by six years.
>
> But so when I'm looking at the relevant conduct, I think I'm not looking at just, you know, one or two events, I'm looking at something much greater.

Dkt. No. 50 at 10.

Similarly, when the Court considered the 2023 Agreement, it explained:

> You know, the thing that is really troubling to me is that, according to the presentence report and the victim's statement, this conduct didn't take place over a day or a night, it took place over the course of years, as much as six years.
>
> And, once again, the parties have brought to me a plea agreement that does not adequately reflect the gravity of the defendant's conduct. A sentence pursuant to the terms of this plea agreement would not meet the requirements and objectives set forth in Title 18, U.S.C. § 3553(a), it would not be reasonable, and it would not be sufficient. It would also not reflect the seriousness of the offense in this case. It would not serve as an adequate deterrent to the defendant. It would not promote respect for the law. It would not provide just punishment for the offense. And it

---

presumption . . . is an *appellate* court presumption." *Id.* at 351 (emphasis in original). A district court "may ***not*** presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 39 (2007) (emphasis added). *See also United States v. Zamora-Solorzano*, 528 F.3d 1247, 1250 (10th Cir. 2008) (explaining that under *Rita*, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply" (emphasis omitted) (quotation omitted)).

> certainly would not provide adequate protection for the public from further crimes by this defendant.

Dkt. No. 73 at 15.

For context, yearslong sexual abuse of minor children by adults in positions of authority is sadly too common in Northeastern Oklahoma and now routinely prosecuted in federal court following the Supreme Court's decision in *McGirt v. Oklahoma*. In the past year, this Court has sentenced numerous defendants for similar crimes. While every case receives the individualized attention that the law and justice require, in the Court's view, the parties' prior agreed resolutions, if accepted, would have created—not prevented—a sentencing disparity among similarly situated defendants who have been sentenced in this Court.

"[A] district court's discretion to sentence within the applicable [statutory] range is extremely broad." *Robertson*, 45 F.3d at 1437. "There can be little doubt that rejecting a plea agreement due to the court's refusal to permit the parties to bind its sentencing discretion constitutes the exercise of sound judicial discretion." *Id.* at 1439.[6]

Again, the Court notes that it has withheld decision on acceptance or rejection of the 2024 Plea Agreement until the sentencing hearing. The parties are encouraged to set forth their respective justifications they would like the Court to consider in making its decision, in timely filed sentencing memoranda, including but not limited to the factors set forth in 18 U.S.C. § 3553.

DATED this 21st day of June 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[6] The parties apparently missed this sentence—and the accompanying holding that affirmed the district court's rejection of the plea agreement—when they cited *Robertson* as support for their proposition that the Court had exceeded its discretion.